**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THERESA A.,<br><br>     PLAINTIFF,<br><br>  V.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>     DEFENDANT. | Civil Action No. 23-03727 (SDW)<br><br>**OPINION**<br><br>July 15, 2024 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Theresa A.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Ricardy Damille's ("ALJ Damille" or "the ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper pursuant to 28 U.S.C. § 1391(b).  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, this Court finds that ALJ Damille's factual findings are supported by substantial evidence and that his legal determinations are correct.  Therefore, the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

On November 2, 2020, Plaintiff applied for a period of disability and DIB.  She alleged that she was unable to work as of October 30, 2020.  Her application was denied on February 12, 2021, and again upon reconsideration on October 5, 2021.  Plaintiff filed a written request for a hearing which was held by telephone, as agreed upon by all parties, on February 4, 2022, ALJ Damille presiding.  Plaintiff was represented by counsel and Albert Sabella was the vocational expert.  On March 18, 2022, ALJ Damille issued an unfavorable decision which concluded that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for appellate review on May 17, 2023.  Plaintiff then filed suit in this Court.  (D.E. 1.)

**B.  Medical History**

Plaintiff alleges disability as of October 30, 2020 when she was no longer able to work because of her "diabetes, hypertension, chronic kidney disease, asthma/bronchitis/chronic obstructive pulmonary disease (COPD), neuropathy, anxiety attacks, obstructive sleep apnea (OSA) and sciatic nerve problems."  (Tr. 66.)  She was forty-nine years old when she applied for disability and turned fifty years old several weeks later.  At all relevant times, Plaintiff was 5'6" and weighed approximately 190 lbs.  She worked as a para-professional (i.e., "teacher's aide") for Newark Public Schools from 1992 to 2020 for approximately six hours a day, five days a week.  Dr. Shailender M. Karry, M.D., was Plaintiff's primary healthcare provider and treated her for sleep apnea, asthma, COPD, bronchitis, type II diabetes, high blood pressure, stage 1 kidney disease, peripheral neuropathy, sciatica, varicose veins, and liver disease.  (Tr. 233.)  Dr. Karry later diagnosed Plaintiff with shortness of breath, anxiety, swelling of both legs, low back pain with numbness and tingling.  On February 4, 2020, Plaintiff was admitted to the emergency room for a wound on her right foot.  Beginning February 21, 2020, she attended physical therapy to address her low back pain.  (Tr. 483-547.)  Several months later, on May 11, 2020, Plaintiff saw Dr. Yu-Ching Chi, a podiatrist, three times for diabetic footcare, first for a pre-ulcerative lesion then for

elongated painful nails.  (Tr. 465, 470, 479.)  On her last physical therapy visit, Plaintiff was noted to have difficulty with home care activities requiring bending or squatting and difficulty with lifting objects, as well as decreased mobility with transfers.  (Tr. 544.)  On December 1, 2020, after several visits with Plaintiff, wherein she was advised to exercise regularly and monitor her blood sugar, Dr. Karry deemed Plaintiff permanently disabled.  He determined that, although Plaintiff does not require a cane to walk and does not have frequent asthma attacks, she is nevertheless incapable of even low stress jobs, is likely to miss more than four days of work per month and has symptoms severe enough to interfere with her attention and concentration.  (Tr. 390-92.)  Regarding Plaintiff's type II diabetes, Dr. Karry noted that Plaintiff was noncompliant with diet and exercise and that her BMI ranged from 30.5 to 32.76 and at times, she was noted to be "[n]ot obese."  (Tr. 336, 349, 363 and 366.)  He continued to assess Plaintiff's type II diabetes and noted that her general adult medical examination was "without abnormal findings" and she had a "[n]ormal physical."  (Tr. 331.)  By the end of 2020, Plaintiff's examinations were largely unchanged.  (Tr. 326-29.)  With respect to her chest pains, palpitations, and shortness of breath, Essex Cardiovascular reported that Plaintiff's symptoms were resolved on January 7, 2021.  (Tr. 624-25.)  Dr. Karry renewed his previous diagnosis that Plaintiff was permanently disabled on May 18, 2021.  He noted that Plaintiff remained "totally and permanently disabled" and that her conditions "prevent[ed] her from safely complet[ing] her job."  He further noted that her symptoms were severe, she could no longer work, and there was no "possibility that [Plaintiff] might improve to a degree to perform [her] job duties."  (Tr. 658.)  On June 16, 2021, Dr. James Lamprakos, M.D., a general practitioner and family doctor, determined that Plaintiff was totally and permanently disabled from performing the normal duties of a teacher's aide due to her diabetes and COPD/shortness of breath.   However, medical consultant Dr. Nancy Simpkins, M.D.,

3

determined that Plaintiff was not disabled based on her age, education, and physical capabilities, despite finding Plaintiff to have severe diabetes mellitus and severe asthma.[2] She advised Plaintiff to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and the like. (Tr. 76.) Dr. Simpkins's findings were later supported in August 2021 by Dr. Deogracias Bustos. (Tr. 82–84.) Similarly, after a physical assessment, Dr. Thiruvengadam Anandarangam, a pulmonologist at Newark Beth Israel Medical Center, determined Plaintiff was not "totally and permanently disabled" from her multiple diagnoses but concluded that she would not be able to work during exacerbations of her conditions, which would require treatment. (Tr. 656.)

In November 2021, a pulmonologist noted that Plaintiff's asthma was mild, and her shortness of breath was resolved.   (Tr. 637-38.)  By the end of 2021, despite complaining about low back pain, numbness in her fingers, and continuing blood sugar fluctuations, Plaintiff's musculoskeletal examination was negative for muscle weakness, painful joints, limited movement, and decreased range of motion.  (Tr. 645.)

### C.  Hearing Testimony

At the administrative hearing on February 4, 2022, Plaintiff testified that she worked as a teacher's aide from 1992 until October 31, 2020 when she retired due to her health issues.  She received some training on preventing a child from harming themselves or others and on ways to deal with children with autism.  (Tr. 56.)  She explained that working was difficult due to her limited mobility, difficulty breathing, anxiety attacks, and stress.  (Tr. 36.)  She also described

---

[2] Dr. Nancy Simpkins found that Plaintiff could occasionally lift and/or carry 20 lbs., could frequently lift and/or carry 10 lbs., had unlimited push and/or pull range in her upper and lower extremities (other than lift and/or carry), could stand and/or walk and sit (with normal breaks) for 6 hours in an 8 hour work day, and could occasionally: climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop (i.e. bend at the waist), kneel, crouch (i.e. bend at the knees), and crawl.  She also found that Plaintiff had no manipulative, visual, or communicative limitations. (Tr. 76.)

suffering from daily side effects from the various medications she had been prescribed including muscle cramps, extreme thirst, drowsiness, tiredness, fatigue, nausea, and dizziness. (Tr. 38.)

Plaintiff stated that she sleeps with a CPAP machine and sometimes wakes up congested and lethargic. She testified that she does not clean as much and cannot stay awake and move about for eight or ten hours every day. (Tr. 40-41.) She stated that she cannot bend, stoop, squat, or climb stairs nor can she sit for sustained periods of time. (Tr. 42-43.) Plaintiff further testified that she began using a cane to walk in November 2020 and her medication increased the frequency in which she uses the bathroom. ALJ Damille posed several hypotheticals to Albert Sabella, the vocational expert ("V.E. Sabella"), who testified that Plaintiff would not be able to perform the same job with the same duties that she previously held. He also testified that, given her inability to sit or stand for sustained periods of time and need to take time off from work, she may be precluded from many sedentary jobs. However, based on her limitations and the jobs available in the national economy, V.E. Sabella concluded that she would be able to perform some sedentary work.

## II.   **LEGAL STANDARD**

### A.  **Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec*., 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "This standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is sufficiently developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-CV-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

This Court will not set aside an ALJ decision "merely because [it] would have reached a different decision."  *Cruz*, 244 F. App'x at 479 (citing *Hartranft*, 181 F.3d at 360.  That is to say that this Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).

Finally, in considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.  The Five-Step Disability Test**

Under 42 U.S.C. § 1382, an individual will be considered disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do [her] previous work but [unable], considering [her] age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Cruz*, 244 F. App'x at 480.  The test is conjunctive.  If the ALJ determines at a step that the claimant is not disabled, the evaluation ends there and the ALJ is not to proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA") which is defined as work activity that is both substantial and gainful.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaged in SGA, the ALJ proceeds to step two.

7

At step two, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 1985 WL 56856 (Jan. 1, 1985); SSR 96-3p, 1996 WL 374181 (Jul. 2, 1996); SSR 96-4p, 1996 WL 374187 (Jul. 2, 1996).  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ does not find a severe impairment or combination of impairments, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If it does not, the analysis continues and the ALJ proceeds to the next step.

Before analyzing step four, the ALJ must first determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ

considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

At step five, the ALJ must determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, then she is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

On March 18, 2022, ALJ Damille issued a final decision that applied the five-step sequential evaluation process and concluded that Plaintiff was not disabled. (Tr. 15-24.) At step one, the ALJ determined that Plaintiff had not engaged in SGA since the onset date of her alleged disability. As to step two, he determined that Plaintiff had severe impairments of sciatica, obesity, asthma, COPD, peripheral neuropathy, and type II diabetes. (Tr. 17.) Regarding step three, ALJ Damille found that Plaintiff did not have an impairment or combination of impairments that equal to, or

exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After a review of all the facts and evidence in the record, he determined that Plaintiff had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1520(a).[3] Accordingly, at step four, ALJ Damille found that Plaintiff was unable to perform the duties of her past work as a teacher's aide/childcare attendant because it required more exertion than he deemed her capable of. (Tr. 23.) Thus, at step five, relying on the record and the vocational expert's testimony, he found that a significant number of unskilled, light jobs existed in the national economy that Plaintiff could perform. He therefore concluded that Plaintiff was not disabled. (Tr. 23-24.)

**B. Analysis**

On appeal, Plaintiff seeks reversal of ALJ Damille's ~~final~~ decision denying her DIB under the Social Security Act. First, Plaintiff argues that ALJ Damille erred at step three of the analysis when he determined that she did not have an impairment or combination of impairments so severe that she was precluded from gainful activity. Specifically, she argues that ALJ Damille committed reversible error when he found that Plaintiff's obesity did not meet or equal a listed impairment. However, Plaintiff never included obesity in her applications for benefits when asked to list all disabling impairments, (Tr. 210), so further consideration of it was not warranted. *See Rutherford v. Barnhart*, 339 F.3d 546, 553 (3d Cir. 2005). Additionally, Social Security Ruling 19-2 explains that obesity is not a listed impairment, but the functional limitations resulting from obesity may medically equal a listing. *See* SSR 19-2p, 2019 WL 2374244 (May 20, 2019). Nevertheless, ALJ Damille "fully considered obesity in the context of the overall record evidence" and determined

---

[3] Specifically, ALJ Damille found that despite Plaintiff not being able to stand and walk for longer than four hours in an eight-hour workday, never being able to climb ladders, ropes, and scaffolds, never being able to crawl, and always needing to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gases, and poor ventilation, Plaintiff has enough mobility and capabilities to perform light jobs.

that Plaintiff's treatment records from Dr. Karry and Dr. Chi did not show that her obesity impacted her functioning greater than he had accounted for in Plaintiff's RFC.

ALJ Damille did not find Dr. Karry's opinion that Plaintiff was totally disabled and unable to perform any work persuasive because it was unsupported by objective findings.  *See* Tr. 22. Further, Dr. Karry's assessment was undermined by his peers who also examined and/or treated Plaintiff.  "Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records*, see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]"  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)[4].  Here, the ALJ considered each of the alleged impairments (i.e., varicose veins, sleep apnea, hypertension, anemia, stage 1 kidney disease, anxiety, etc.) both alone and in combination along with the medical records and testimony and concluded that Plaintiff did not have an impairment that medically equaled the severity of a listed impairment.  ALJ Damille's conclusions are supported by substantial evidence.  *See Cruz*, 244 F. App'x 475, 479.

Plaintiff also argues that the ALJ erred by not posing a hypothetical question to V.E. Sabella that included all of her alleged impairments.  She argues that omitting all of her impairments resulted in V.E. Sabella erroneously concluding that she could perform sedentary work.  Contrary to Plaintiff's broad assertion, the scope for hypothetical questions must be narrowed.  When it comes to a vocational expert, the ALJ must only pose hypothetical questions that include limitations that are supported by the record.  *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d

---

[4] *See Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989) (holding that "the treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability.")

Cir. 1987). Here, ALJ Damille posed several hypothetical questions that included the impairments that were consistent with his findings and substantially supported by the evidence. V.E. Sabella provided a response accordingly. Thus, no error was committed by way of hypothetical questions.

Finally, Plaintiff argues that ALJ Damille erred by not considering her borderline age when determining whether other jobs existed in the national economy that she could perform. To the contrary, Plaintiff's age was considered throughout the analysis. Indeed, because Plaintiff was forty-nine at the time she applied for benefits and turned fifty several weeks later, ALJ Damille considered both the younger age category and the older age category when determining Plaintiff's RFC. V.E. Sabella was even asked to consider the hypothetical questions under both age categories. Ultimately, ALJ Damille determined that Plaintiff would not be considered disabled under either age category.

## IV.   **CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Damille's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties

12